FILED
SUPERIOR COURT
OF GUAM
2022 JAN 20 PM 5: 01
CLERK OF COURT
By:

**IN THE SUPERIOR COURT OF GUAM**

| PEOPLE OF GUAM, | |
|---|---|
| Plaintiff, | Case No. CF0319-20 |
| vs. | **DECISION AND ORDER** |
| DONALD CASTRO ALDAN | **(Defendant's Motion to Suppress Evidence)** |
| Defendant. | |

**INTRODUCTION**

This matter came before the Honorable Alberto E. Tolentino on December 28, 2021, for an evidentiary hearing on Donald Castro Aldan's ("Defendant") Motion to Suppress Evidence ("Motion to Suppress"), filed on January 29, 2021. Alternate Public Defenders Shinju Flynn and Clyde Lemons appeared for Defendant. Assistant Attorney General Jeremiah Luther appeared for the People of Guam ("People"). Having considered the arguments and the applicable law, the Court hereby **DENIES** Defendant's Motion to Suppress Evidence.

**BACKGROUND**

On July 31, 2020, a grand jury indicted Defendant on the following charges: (1) Assault Against a Peace Officer (As a Third Degree Felony); (2) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (3) Resisting Arrest (As a Misdemeanor); (4) and Criminal Mischief (As a Misdemeanor). Indictment, July 31, 2020. On January 29, 2021, Defendant filed the instant motion. Def.'s Mot. to Suppress Evidence (hereinafter "Mot.

to Suppress"), Jan. 29, 2021. The People filed an opposition. People's Opp'n. to Def.'s Mot. to Suppress (hereinafter "People's Opp'n."), Feb. 12, 2021. Defendant filed a reply to the People's opposition. Def.'s Reply Brief in Support of His Mot. to Suppress Evidence (hereinafter "Def.'s Reply"), Aug. 11, 2021. On December 28, 2021, the Court held an evidentiary hearing and took the parties' arguments under advisement. Minute Entry, Dec. 28, 2021.

**FINDINGS OF FACT**

Guam Police Department ("GPD") Officer Valenzuela and Officer Cruz were the witnesses called by the People during the evidentiary hearing. Digital Recording at 2:46:13–3:20:25 (Mot. H'rg. Dec. 28, 2021). Defendant did not call any witnesses. *Id.* From the testimony received from these witnesses the Court finds:

Officer Valenzuela and Officer Cruz were patrolling along Swap Road in Dededo when a vehicle made a right turn and the registration tag became visible. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). The officers noticed that the registration tag was expired and conducted a traffic stop. *Id.* Officer Valenzuela approached the operator of the vehicle, Robert Cruz ("Cruz"), while Officer Cruz maintained observation of the passenger side of the vehicle for officer safety. *Id.* Officer Valenzuela informed Cruz that the reason for the traffic stop was the expired registration, and asked to see Cruz's driver's license. *Id.* Cruz did not have a driver's license. *Id.* Cruz began searching for the registration, and in doing so, placed his left hand in the driver's door. *Id.* Then, Cruz put his hand in his pocket. *Id.* These actions made Officer Valenzuela concerned about his safety. *Id.* Officer Valenzuela asked if he could search the vehicle, and Cruz said, "Go ahead." *Id.* Officer Valenzuela asked Cruz to step out of the vehicle so he could search it. *Id.* Officer Valenzuela asked for consent to search the vehicle because Cruz's fumbling inside of the door and his pockets made Officer

Valenzuela nervous. *Id.* At this point, Officer Valenzuela was not going to let the vehicle leave the scene because Cruz did not have a valid driver's license. *Id.*

While Officer Valenzuela was interacting with Cruz, Officer Cruz continued to observe the passenger side of the vehicle. *Id.* Officer Cruz recognized Defendant from other encounters; this encounter was Officer Cruz's second or third time arresting Defendant. Digital Recording at 3:15:17–3:20:25 (Mot. H'rg. Dec. 28, 2021). Officer Cruz heard Officer Valenzuela obtain consent to search the vehicle, and Officer Cruz instructed Defendant to exit the vehicle. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Officer Cruz wanted to make sure there were no weapons in the vehicle before conducting the search. *Id.*

When Defendant stepped out of the vehicle, Officer Cruz noticed Defendant was clenching something with his hand that was inside of his pocket. *Id.* Officer Cruz asked Defendant to show him his hands. *Id.* When Defendant showed him the item, Officer Cruz recognized it as a glass pipe used for smoking methamphetamine. *Id.* He observed a brown residue inside of the pipe. *Id.* Officer Valenzuela also observed Defendant holding a glass pipe with residue after unclenching his fist. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Officer Cruz grasped Defendant's wrist and Defendant tossed the glass pipe. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Officer Cruz informed Defendant that he was going to arrest him, and attempted to place him in hand restraints. *Id.* Defendant began begging Officer Cruz not to arrest him and resisting Officer Cruz's attempts to place him in hand restraints. *Id.*

Officer Valenzuela heard Defendant refuse to put his arms behind his back for arrest. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Officer Valenzuela approached Defendant and attempted to help Officer Cruz arrest Defendant by placing Defendant's arms behind his back. *Id.* Defendant turned around and struck Officer Cruz.

Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Officer Valenzuela testified the strike appeared intentional and not accidental. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Defendant continued to resist arrest until the officers finally managed to place hand restraints on Defendant. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). The officers secured Defendant in their patrol vehicle and transported him to the GPD precinct. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Defendant was "irate" during the transport to the GPD precinct. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). The officers left Cruz at the scene and issued a warning about driving without a license. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). No *Miranda* warnings were given to Defendant at the scene. *Id.*

When they arrived at the GPD precinct, Officer Cruz placed Defendant alone in an interview room and left the room to fill out paperwork regarding the arrest. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Defendant was alone in the interview room for approximately thirty minutes. *Id.* When Officer Cruz returned to the interview room, Defendant was slouched on the table with his hands in front of his person. *Id.* Defendant's hands were handcuffed behind his back when Officer Cruz exited the interview room. *Id.* Officer Cruz testified that Defendant likely stepped through his hands in order to assume this position. *Id.*

Upon re-entering the interview room, Officer Cruz approached Defendant. *Id.* Defendant assumed a "fighting position," and Officer Cruz noticed that Defendant was holding a "vent flap" from the ceiling of the interview room. *Id.* Officer Cruz matched the vent flap that Defendant held to a vent flap that was missing from the ceiling. *Id.* Officer Cruz surmised that Defendant was able to move his handcuffed hands in front of his person, hoist himself up onto the table, and remove the vent flap from the ceiling. *Id.* Officer Cruz disarmed Defendant

by putting him on the ground and removing the vent flap from his hand. *Id.* Officer Cruz never gave Defendant *Miranda* warnings while he was in the interview room. *Id.* At no point during Defendant's interactions with the officers at the scene, during transport to the GPD precinct, or in the interview room did Defendant admit that he possessed methamphetamine or that he intended to strike Officer Cruz in the field. *Id.* Defendant's statements to the officers solely concerned his desire not to go back to jail. *Id.*

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam via section 1421b(c) of the Organic Act of Guam. *People v. Johnson*, 1997 Guam 9 ¶ 4. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Every search or seizure must be reasonable under the circumstances to pass muster under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810 (1996).

**A. The initial stop of the vehicle was a valid *Terry* stop under the Fourth Amendment, and Defendant was seized during the initial interaction.**

The Fourth Amendment to the United States Constitution "permits brief investigative detentions when a police officer has a reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "The *Terry* stop doctrine has been extended to justify the investigatory stop of a motor vehicle." *Johnson*, 1997 Guam 9 ¶ 4 (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). "As a general matter, the decision to stop an automobile [without a warrant] is reasonable where the police have probable cause to believe that a traffic violation has occurred.

Further, it is reasonable to stop a car where the police merely have reasonable suspicion to believe the driver has committed a traffic violation." *People v. Charagulaf*, 2001 Guam 1 ¶ 17 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

"In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 4. Furthermore, reasonable suspicion must exist at the time the stop was initiated. *Id.* The "lawfulness of a *Terry* stop turns not on the officer's actual state of mind at the time the challenged action was taken, but rather on an objective assessment of the officer's actions. In other words, if sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent." *United States v. Branch*, 537 F. 3d 328, 337 (4th Cir. 2008). Guam law requires vehicles to be properly registered before being driven upon a highway. GCA 16 § 7101; GCA 16 § 7130; GCA 16 § 7136; GCA 16 § 7137.

Officer Cruz and Officer Valenzuela testified that they observed the vehicle's expired registration when it made a right turn. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). The Court finds no reason that GPD officers—trained to observe traffic violations—would have erroneously spotted an expired registration tag. Therefore, because the officers observed a traffic violation—driving with expired registration—they had reasonable suspicion to pull over the vehicle for a valid *Terry* stop.

Defendant argues that he was seized once the officers initiated the traffic stop. Mot. to Suppress at 4. The People argue that Defendant was not seized, but that the traffic stop was a voluntary interaction. People's Opp'n. at 6. The Court finds that Defendant is correct; he was

seized during the initial traffic stop. All occupants of a vehicle are seized during a traffic stop. *Brendlin v. California*, 551 U.S. 249, 255–56 (2007). As a passenger inside of a vehicle stopped for a traffic violation, Defendant was seized within the meaning of the Fourth Amendment during the initial traffic stop. However, because the traffic stop was a valid *Terry* stop, the Court holds the seizure was valid.

**B. The seizure ended and became a consensual encounter when Defendant exited the vehicle.**

The United States Supreme Court recognizes that not every encounter between the police and citizens amounts to a seizure under the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429 (1991). "A consensual encounter is the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement officer." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). An interaction that begins as a seizure may become a consensual encounter for purposes of the Fourth Amendment. *United States v. Wilson*, 413 F.3d 382, 388 (3rd Cir. 2005).

When examining whether an encounter between police and a citizen constitutes a seizure under the Fourth Amendment, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439. The reasonable person test presupposes an innocent person. *Id.* at 438. In "conducting this analysis, examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Barry*, 394 F.3d

1070, 1076 (8th Cir. 2003). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry v. Ohio*, 329 U.S. 1, 19 (1968). There is no requirement that the officer tell a defendant that he does not have to respond or is free to leave. *West*, 219 F.3d 1171 at 1176. A person is seized when his freedom of movement is restrained by physical force, or he is compelled to comply through a show of authority. *United States v. Mendenhall*, 466 U.S. 544, 533–55 (1980). Absent these circumstances, the interaction between the parties is considered consensual. *Id.*

Officer Valenzuela asked Cruz for consent to search the vehicle, and Cruz gave valid consent for a search. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Upon receiving consent to search the vehicle, the officers asked everyone in the vehicle to exit the vehicle so they could begin the search. *Id.* Defendant argues that the officers prolonged the stop by asking for consent to search the vehicle. Mot. to Suppress at 4. The Court disagrees. Officer Valenzuela testified that he felt nervous when Cruz was fumbling around looking for the vehicle's registration, and Officer Valenzuela was worried about the officers' safety. Digital Recording at 2:46:13–2:50:27 (Mot. H'rg. Dec. 28, 2021). Consequently, the Court finds that Officer Valenzuela asked for consent to search the vehicle for officer safety, not to prolong the stop. At that point in the encounter, the focus was on Cruz and not on Defendant; neither officer had interacted with Defendant at the time Officer Valenzuela ordered everyone out of the vehicle. *Id.* Accordingly, taking into account the totality of the circumstances at this point in the encounter, the Court finds that Defendant was free to leave.

Defendant asserts that "[f]ar from telling Mr. Aldan he was free to leave, the police instead required that he stay and submit to being searched." Mot. to Suppress at 4. The Court disagrees. The law does not require the officers tell Defendant he is free to leave. *West*, 219

F.3d at 1176. Nothing in the record suggests that Officer Cruz made any statements to Defendant nor used any language or tone of voice that would have suggested to Defendant that he was not free to leave. Rather, the record shows that Officer Cruz simply requested Defendant exit the vehicle. Although Officer Cruz knew Defendant from previous encounters, there is nothing in the record indicating that this knowledge influenced his interactions with Defendant. Officer Cruz did not speak with Defendant until he overheard Officer Valenzuela obtain consent to search the vehicle. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Likewise, nothing in the record illustrates that Officer Cruz placed his hand on his weapon, restrained Defendant, touched Defendant, or took any other action causing Defendant to submit to Officer Cruz's authority. It was only after Defendant displayed the glass pipe that Officer Cruz touched Defendant's wrist. *Id.* While there were multiple officers present at the scene, Officer Valenzuela did not interact with Defendant until he noticed Officer Cruz struggling to restrain Defendant. *Id.* As a result, the presence of two officers would not have been intimidating to Defendant. The Court also does not find anything in the record that would have conveyed to Defendant that he was not free to leave. Thus, the Court holds that Defendant willingly exited the vehicle.

When Defendant exited the vehicle, Officer Cruz noticed that Defendant's hand was clenched inside of his pocket. *Id.* Officer Cruz wanted to ensure that Defendant did not have a weapon, and asked Defendant to show Officer Cruz his hands. *Id.* Like the request to exit the vehicle, the Court finds nothing in the record that suggests Officer Cruz's request for Defendant to show his hands was improper. The law permits Officer Cruz to ask Defendant non-coercive questions, and Defendant can decline to cooperate. *West*, 219 F.3d 1171 at 1176. Thus, the Court finds that Defendant could have declined to show Officer Cruz his hands, but instead he chose to comply with Officer Cruz's request.

Defendant analogizes this case to *Ybarra v. Illinois*, 444 U.S. 85 (1979) and assets that the law does not permit the officers to search every person inside of a vehicle stopped for a traffic violation. Def.'s Reply at 6. Yet, the officers did not discover the glass pipe during a pat down of Defendant, or through any other action that would have caused Defendant to believe he had to submit to their authority. Nothing in the record suggests Officer Cruz took actions—such as touching his weapon or using language—that created coercive questioning. The Court holds that Officer Cruz asked Defendant a non-coercive question, and Defendant willingly replied.

## C. The seizure of the glass pipe was valid because the glass pipe was in plain view.

Where police discover an item in plain view that they immediately recognize is incriminating, they may seize such an item provided that the "intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement." *Horton v. California*, 496 U.S. 128, 134–35 (1990). The Supreme Court of the United States created a three-part test to determine if the plain view doctrine applies. *Id.* at 136–37. In order for a warrantless search or seizure to be valid under the plain view doctrine: (1) the officer must arrive at the place from which the evidence could be plainly viewed without violating the Fourth Amendment; (2) the evidence must be in plain view and its incriminating character must also be immediately apparent; and (3) the officer must also have a lawful right of access to the object itself. *Id.*

First, the Court finds that Officer Cruz and Officer Valenzuela arrived at the place from which they saw the glass pipe without violating the Fourth Amendment. The officers engaged in a valid *Terry* stop when they stopped the vehicle for a traffic violation. Cruz gave valid consent for the officers to search the vehicle. Defendant voluntarily exited the vehicle and

showed the officers his hands when Officer Cruz requested him to do so. As discussed above, there is nothing indicating the officers' interactions with Defendant were unlawful.

Second, the Court finds that the glass pipe was in plain view, and its incriminating character was immediately apparent. Once Defendant removed his hand from his pocket and unclenched it, the contents of his hand would have been easily seen by anyone in the vicinity of Defendant. Officer Valenzuela and Officer Cruz both testified that they recognized the glass pipe with brown residue as a pipe used for smoking methamphetamine from their training.

Third, the Court finds that the officers had a lawful right of access to the glass pipe because Defendant stood outside of the vehicle, on a public road, with the glass pipe in his hand. As Defendant's hand was in the open and clearly visible to the officers, there is no reason that the officers did not have a lawful right of access to the object itself.

Therefore, the Court holds that the glass pipe was in plain view, and consequently, the seizure of the glass pipe was valid.

## D. Defendant was not subject to custodial interrogation and *Miranda* warnings were not required.

The Fifth Amendment prohibits the government from compelling an individual to incriminate himself. *People v. Sangalang*, 2001 Guam 18 ¶ 11. The Fifth Amendment privilege against self-incrimination "attaches when the government subjects a defendant to custodial interrogation." *Id.* "Custodial interrogation" occurs when law enforcement initiate questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *People v. Farata*, 2007 Guam 8 ¶ 20. Prior to the initiation of a custodial interrogation, the police must inform the suspect of his right to remain silent. *Sangalang*, 2001 Guam 18 ¶ 11. However, the "special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a

suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). The Fifth Amendment does not bar volunteered statements of any kind. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

The Court holds that Defendant was in custody once he was arrested. Officer Cruz testified that Defendant was never given *Miranda* warnings after his arrest. Digital Recording at 2:46:13–3:15:17 (Mot. H'rg. Dec. 28, 2021). However, the Court finds that after the officers restrained Defendant, no interrogation occurred. Officer Cruz testified that neither officer questioned Defendant while transporting Defendant to the GPD precinct, nor did they ever question Defendant while he was in the interview room. Digital Recording at 3:03:09–3:15:17 (Mot. H'rg. Dec. 28, 2021). Nothing in the record indicates that the officers tried to elicit statements from Defendant while he was in custody. Accordingly, the Court finds any statements Defendant made while in custody he volunteered to the officers. Moreover, Officer Cruz testified that any statements that Defendant made while in custody were about his desire not to go back to jail or pleading with the officers not to arrest him. *Id.* Therefore, as Defendant was not subject to custodial interrogation and he did not making any incriminating statements, the Court declines to suppress any of Defendant's statements

## CONCLUSION

For the above reasons, the Court **DENIES** Defendant's Motion to Suppress Evidence.

SO ORDERED, this _____ day of ___ JAN 2 0 2022 ___ 2022.



_____

HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_____ AG's _____

_____ APD _____

Date: 1/20/22 Time: 6:05pm

Deputy Clerk, Superior Court of Guam

Page **13** of **13**